IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| DAVID B. HUNT, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:24-cv-441-DPJ-LGI |
| The UNITED STATES OF AMERICA; JOHN/JANE DOE ASSISTANT US ATTORNEY(S); SPECIAL AGENT MICHELLE SUTPHIN, FBI; NEIL SANCHEZ; SPECIAL AGENT ROBERT CULPEPPER, FBI; JOHN/JANE DOE FEDERAL AGENT(S); | ) **COMPLAINT FOR DAMAGES AND OTHER RELIEF** |
| Defendants. | ) **JURY DEMAND** |

## COMPLAINT

Plaintiff David Hunt, through counsel, hereby files this Complaint against DEFENDANTS the United States of America, John/Jane Doe Assistant US Attorney(s), FBI Special Agent Michelle Sutphin, Neil Sanchez, FBI Special Agent Robert Culpepper, and John/Jane Doe federal agent(s) and alleges the following:

## NATURE OF THE ACTION

1. In February 2020, Mr. Hunt was indicted by a grand jury – without probable cause – on eight felony charges of conspiracy and wire fraud in the Southern District of Mississippi. Defendants pursued the indictment of Mr. Hunt without ever notifying him that he was under investigation or attempting to interview him or any of his business associates.

2. In March 2020, the World Health Organization declared COVID-19 a worldwide pandemic, and Mr. Hunt's company applied for relief through the Small Business Association's Paycheck Protection Program ("PPP") to keep his hospitality and other businesses afloat.

1

#102471378v2

3. Meanwhile, Mr. Hunt's indictment remained under seal for months until he was arrested, again without probable cause, in August 2020 at his office in Jackson, Tennessee, in front of his employees and business associates.

4. The United States ultimately dismissed all eight felony counts against Mr. Hunt in July 2022. But that dismissal did nothing to mitigate or reverse the extensive reputational and financial harms Mr. Hunt suffered in the two years that elapsed between the indictment and the dismissal of his charges.

5. Because Mr. Hunt was a well-known businessman and developer, news of his indictment traveled quickly and scuttled numerous prospective and pending deals. Mr. Hunt and his businesses suffered millions of dollars in losses, and to this day, he faces stigma and reputational challenges as a result of being wrongfully accused and arrested in 2020.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over Plaintiff's *Bivens* claim pursuant to 28 U.S.C. § 1331.

7. This Court has jurisdiction over Plaintiff's claim under the Federal Tort Claims Act ("FTCA") pursuant to 28 U.SC. § 1331, 28 U.S.C. § 1346(b), and 28 U.S.C. § 2671 *et. seq*.

8. Plaintiff submitted the FTCA claim to the relevant agency of the United States, the Department of Justice, on or around January 22, 2024. Because the United States failed to respond or otherwise dispose of the claim within six months, the FTCA claim is deemed denied pursuant to § 28 U.S.C. § 2675(A) and thus the claim is ripe.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this district.

#102471378v2

## **PARTIES**

10. Plaintiff David Hunt is a well-known businessman and developer in his hometown of Jackson, Tennessee.

11. Defendant United States of America oversees the operation of the various federal agencies involved in the criminal prosecution of Mr. Hunt, namely, the United States Department of Justice and the United States Department of Education.

12. Theodore Cooperstein was an Assistant United States Attorney ("AUSA") in the Southern District of Mississippi, and was, upon information and belief, the lead prosecutor in the criminal case giving rise to this action who directed the investigation, grand jury proceeding, and arrest of Mr. Hunt.

13. Defendant John/Jane Doe AUSA(s) are AUSAs, who were, upon information and belief, involved in the criminal prosecution giving rise to this action, including the investigation, grand jury proceeding, and arrest of Mr. Hunt.

14. Defendant Neil Sanchez was the Special Agent in Charge at the Office of the Inspector General for the United States Department of Education who was involved in the criminal investigation giving rise to this action, as well as the grand jury proceeding and arrest of Mr. Hunt.

15. Defendant Michelle Sutphin is a Special Agent with the United States Federal Bureau of Investigation ("FBI") who was involved in the criminal investigation giving rise to this action, as well as the grand jury proceeding and arrest of Mr. Hunt.

16. Defendant Robert Culpepper is a Special Agent with the FBI who was involved in the criminal investigation giving rise to this action, as well as the grand jury proceeding and arrest of Mr. Hunt.

17. Defendant John/Jane Doe Federal Agent(s) are Special Agents or investigators with the FBI and/or other federal agencies, who were, upon information and belief, also involved in the criminal investigation giving rise to this action, as well as the grand jury proceeding and arrest of Mr. Hunt.

## BACKGROUND

*David Hunt Earns his Good Reputation*

18. David Hunt is a disabled United States Army veteran who was honorably discharged in or around 1989.

19. Mr. Hunt is a Black entrepreneur who has spent his entire career working to grow and improve his community in and around Jackson, Tennessee.

20. Mr. Hunt founded Hunt Services, Inc. in 1999. Over the past twenty-five years, Hunt Services, with Mr. Hunt at the helm, has developed, owned and operated, and/or renovated numerous restaurants, retail centers, and hotels.

21. In Jackson, Mr. Hunt's company built a local Huddle House, the Americana Kitchen & Grille, and a retail center. Hunt has also completed multi-million-dollar renovations at Lane College, a Historically Black College in Jackson, at a reduced rate. Hunt also contributed his own funds to the construction of a gymnasium at Sacred Heart of Jesus High School.

22. In 2007, Mr. Hunt founded Doc Imaging LLC, which provides large scale document imaging services.

23. Over the years, Mr. Hunt and his wife, Melissa, have given their time and resources to help young people in their community, including a donation that funded the David and Melissa Hunt Business Engagement Lab at Lane College.

24. Mr. Hunt, his family, and his businesses carefully built and protected a positive personal and professional reputation over many years through hard work and engagement with the community.

*The Sealed Criminal Indictment and Surprise Arrest*

25. On the morning of August 26, 2020, Mr. Hunt was exercising at his home when he received a call from one of his employees, who advised that the FBI was at his office and wanted to see him.

26. Mr. Hunt informed the employee that he would head to the office as soon as he could. The call ended.

27. Mr. Hunt's phone rang again within a few minutes. This time, his employee told him the FBI Agent wanted to speak with him. The FBI Agent got on the line and told Mr. Hunt that he needed to get to his office "immediately."

28. At no point did the FBI Agent mention the reason for his visit or that there was a warrant for Mr. Hunt's arrest.

29. Mr. Hunt ended the call, got ready for work, and drove to his office around 9:00 a.m.

30. As he pulled up into the parking lot, he saw two law enforcement agents (the "Agents") waiting for him. He recognized one of the Agents, a Black male, as a local FBI Agent.

31. Mr. Hunt got out of his car and attempted to shake the Agents' hands. Instead, the Agent, a White male who was unknown to him, grabbed Mr. Hunt by arm, twisted it behind his back, and threw Mr. Hunt against the side of his car.

32.     Mr. Hunt was placed under arrest, handcuffed, and put into the backseat of the Agents' vehicle in the parking lot of his office park, in full view of his employees and other business professionals arriving for work that day.

33.     As he was being arrested, he saw his staff watching out the window, visibly upset by the scene. Mr. Hunt's fellow board member of a local non-profit, who worked in the same office park, also witnessed Mr. Hunt's very public arrest and his aggressive handling by the White Agent in the parking lot.

34.     Following his arrest, Mr. Hunt was taken to the Jackson, Tennessee federal building for processing.

35.     Mr. Hunt, who had no criminal history, was subjected to fingerprinting, a mugshot, a drug test, and a full body strip search by the deputy marshal(s), while he was still handcuffed.

36.     Finally, he was placed in a holding cell, and the handcuffs were removed.

37.     Once in the cell, Mr. Hunt was given a copy of the indictment in his criminal case ("Indictment") to read. Mr. Hunt then learned – for the first time – that he and three other individuals had been indicted months earlier, on February 25, 2020, by a Mississippi federal grand jury in the Southern District of Mississippi for one count of conspiracy and seven counts of wire fraud in connection with an alleged conspiracy to defraud the Mississippi Department of Education.

38.     On reading the Indictment, Mr. Hunt immediately told the Agents that the indictment did not make sense and was untrue.

39.     The White FBI Agent told Mr. Hunt "we don't make mistakes" and proudly stated that the government had a 99% conviction rate, or words to that effect.

#102471378v2

40. The charges against Mr. Hunt and his co-defendants focused on contracts with the Mississippi Department of Education for the conversion of teacher personnel files from microfiche into digital format and related events between 2013 and 2016.

41. The indictment remained under seal from February 25, 2020, until Mr. Hunt's arrest on August 26, 2020.

42. At no point prior to his indictment or arrest did any of the case agents or the lead prosecutor, Mr. Cooperstein, ever notify Mr. Hunt that he was under investigation, ask to interview him, or give him the opportunity to testify before the grand jury.

43. The United States Department of Justice's "Justice Manual" urges prosecutors, in appropriate cases, "to notify [targets of the investigation] a reasonable time before seeking an indictment in order to afford him or her an opportunity to testify before the grand jury." U.S. Justice Manual 9-11.153 (2020).

44. Upon information and belief, the FBI maintains one or more manuals of investigative operations and guidelines that clearly direct its agents to interview or at least attempt to interview a potential subject or target of an investigation prior to seeking an indictment.

45. Upon information and belief, it has been the longstanding practice and a requirement of the FBI and the United States Attorney's Office for the Southern District of Mississippi for a prosecutor and/or case agent to interview or attempt to interview a subject or target of an investigation before presenting a case against that individual to a grand jury and seeking an indictment. This interview requirement is mandatory in cases involving a subject or target with no prior criminal history who is suspected of committing or otherwise being involved with a non-violent crime, such as fraud or public corruption.

46. Upon information and belief, no individual has been indicted in the Southern District of Mississippi for a non-violent fraud or public corruption charge, without being first contacted and/or interviewed by either the United States Attorney's Office or the lead federal investigating agent.

47. Mr. Hunt did not receive a "target letter," he was not visited by agents, and (to his knowledge) none of his family members or business associates in Jackson, Tennessee was approached by the government at any point during Defendants' investigation before Cooperstein and Defendants presented the case to the grand jury and pursued the Indictment.

*The Flawed, Tainted Decision to Indict and Arrest Mr. Hunt*

48. Upon information and belief, the only purported connection between Mr. Hunt and the alleged conspiracy at the time of the indictment were the Mississippi Department of Education ("Mississippi DOE") contract bids his businesses Hunt Services, Inc. and Doc Imaging, LLC won, and the related payments the Mississippi DOE made to and through those businesses for work performed in connection with those contracts.

49. Defendants deliberately conducted little to no investigation into Mr. Hunt's purported role in the alleged conspiracy and actively misled the grand jury regarding Mr. Hunt's role in that conspiracy. Defendants apparently opted not to deploy any of the routine investigatory tools available to them (such as interviewing witnesses, or obtaining a search warrant or grand jury subpoena) that would have allowed them to evaluate Mr. Hunt's business and the nature and extent of Mr. Hunt's connection(s), if any, to his co-conspirator(s) and the alleged conspiracy.

50. Upon information and belief, at the time the Indictment was sought and at the time of Mr. Hunt's arrest, Cooperstein and Defendants Sutphin, Sanchez, Culpepper, and/or one or more unknown federal prosecutor(s) and federal agent(s) deliberately ignored the lack of, and/or

blatantly refused to gather, evidence that tended to show that Mr. Hunt had conspired to commit, or had personally committed, wire fraud. Defendants then withheld this glaring evidentiary gap from, and actively misled, the grand jury with respect to Mr. Hunt's alleged role in the charged conduct.

51. Cooperstein, along with Defendants Sutphin, Sanchez, Culpepper, and/or one or more unknown federal prosecutor(s) and federal agent(s), conspired together to pursue a criminal case against Mr. Hunt in an attempt to secure an indictment without probable cause in violation of his constitutional rights, and with regard to conduct that, even if arguably criminal (which Mr. Hunt denies), was barred by the applicable statute(s) of limitation. In order to achieve that objective, Defendants agreed to present the case to the grand jury, withhold exculpatory or otherwise material evidence and information from the grand jury regarding Mr. Hunt's lack of criminal complicity and liability in order to secure an indictment and arrest of Mr. Hunt without probable cause.

52. The grand jury and the Indictment that it returned was tainted as to Mr. Hunt. The grand jury was misdirected in its decision to indict because Cooperstein, along with Defendants Sutphin, Sanchez, Culpepper, and/or one or more unknown federal prosecutor(s) and federal agent(s), deliberately ignored evidence of Mr. Hunt's innocence and lack of criminal culpability, intentionally failed to investigate all the facts related to Mr. Hunt's purported connection to the alleged conspiracy, presented materially false and/or misleading information to the grand jury about Mr. Hunt, and therefore intentionally deceived the grand jury.

53. Defendants' (Sutphin, Sanchez, Culpepper, and/or one or more unknown federal prosecutor(s) and federal agent(s)) conscious choice to withhold information and evidence demonstrating Mr. Hunt's lack of criminal culpability and actual innocence from the grand jury,

and its presentation of false or misleading testimony regarding Mr. Hunt's supposed criminal conduct and liability (including the timing thereof) to the grand jury, tainted the Indictment and the grand jury's finding of probable cause as to Mr. Hunt.

54. The tainted Indictment resulting from the irregular grand jury proceeding led by Cooperstein, in conjunction with Defendants Sutphin, Sanchez, Culpepper, and/or one or more unknown federal prosecutor(s) and federal agent(s), also led to (and tainted) the arrest of Mr. Hunt on those charges.

*The United States Dismisses All Charges Against Mr. Hunt and Two Others.*

55. After his arrest, Mr. Hunt maintained that the Mississippi Department of Education's payments to his companies were legitimate. He never wavered in his claims of innocence.

56. In June 2022, two years after his indictment, the prosecution team, including the lead prosecutor (Cooperstein) and case agent (Defendant Sutphin), agreed to meet with Mr. Hunt for the first time.

57. The prosecution team questioned Mr. Hunt on topics related to the prosecution's theory of the case. Mr. Hunt answered the questions truthfully and continued to emphasize his innocence.

58. On July 7, 2022, in an unrelated criminal case, a federal judge sitting in the Southern District of Mississippi levied a $6,000 monetary sanction against Cooperstein. In the accompanying Order, the Court observed that Cooperstein had, on three occasions in the context of three separate matters, made false representations about his COVID-19 vaccination status to the court. *See United States v. Bell*, U.S. District Court for the Southern District of Mississippi, 3:19-

cr-00031, ECF 100; *see also United States of America v. Escobar-Castro,* Case Nos. 3:19-CR-97; *United States v. Miranda-Alcantar*, 3:20-CR-151.

59. The Court concluded that each of the three representations discussed in the Order were "lies" and that Cooperstein's lack of candor met the definition of "bad faith." *See id.* at page 10.

60. A few weeks after Cooperstein was sanctioned, on July 26, 2022, the United States of America filed an agreed order of dismissal of the Indictment against Mr. Hunt, clearing him of all eight pending felony charges. *United States of America v. Cerissa Renfroe Neal, et al.*, U.S. District Court for the Southern District of Mississippi, 3:20-cr-00037 at ECF 111.

61. On the same date, the United States of America dismissed the Indictment against one of Mr. Hunt's co-defendants, Lambert Martin. *Neal*, Case No. 3:20-cr-00037, at ECF 112.

62. The next day, the United States of America made an oral motion to dismiss the indictment against Errol Harmon in a separate but related case (No. 3:20-cr-00116), which was granted and followed by a dismissal order entered on July 27, 2022.

63. Of the five individuals charged with crimes related to the alleged Mississippi Department of Education conspiracy, the United States dismissed all charges against three of those individuals, including Mr. Hunt. *See Neal*, 3:20-cr-00037; *United States of America v. Errol Harmon*, U.S. District Court for the Southern District of Mississippi, 3:20-cr-00116.

64. Shortly after the dismissals, on August 1, 2022, the United States of America filed a notice of withdrawal with the court in the pending case against Mr. Hunt's former co-defendants, stating that "Theodore M. Cooperstein is no longer employed by the United States Attorney's Office and should therefore be withdrawn as counsel from this case." *Neal*, Case No. 3:20-cr-00037, at ECF 113.

#102471378v2

65. The criminal prosecution of Mr. Hunt lacked probable cause, and his indictment was the product of significant irregularities and omissions at the grand jury stage and during the investigation.

66. Cooperstein, the lead prosecutor who sought the Indictment against Mr. Hunt, was sanctioned by a court in the same District for "lies" that amounted to "bad faith." *See Bell*, 3:19-cr-00031, ECF 100, at page 10.

67. Defendants lacked and consciously elected not to obtain, sufficient evidence to pursue an Indictment of Mr. Hunt, they did not present the grand jury with critical information regarding Mr. Hunt's specific lack of criminal intent and/or culpability, presented false information or evidence about Mr. Hunt, and actively misled the grand jury with regard to the same, and thus the grand jury did not have probable cause to issue a true bill of Indictment as to Mr. Hunt.

*Reputational and Business Harm*

68. Even though Mr. Hunt was cleared when the government dismissed the criminal case against him, the stain of his criminal indictment remained, and the harm he suffered was irreversible.

69. The day he was arrested, Mr. Hunt's arrest was announced in the local news.

70. The United States of America issued a press release announcing the Indictment on September 3, 2020, which named Mr. Hunt as a conspirator who could face up to 20 years in prison for each count of conspiracy and wire fraud, as well as fines of up to $250,000 per count. This original press release remains online. Upon information and belief, it has not been modified or updated to reflect the dismissal of Mr. Hunt or the other individuals who were wrongfully accused:

#102471378v2

https://www.justice.gov/usao-sdms/pr/former-executive-director-and-three-contractors-mississippi-department-education

71. News of Mr. Hunt's arrest spread quickly. In print, in conversation, and even on local radio, the arrest and Indictment caused his businesses to lose significant projects and opportunities.

72. For example, within two months of his arrest, Jackson Tennessee's Community Redevelopment Agency publically declared its intention to terminate its contract with Mr. Hunt because of the Indictment.

*The SBA Loans*

73. While the Indictment and Mr. Hunt's case were under seal, a worldwide pandemic erupted, and Hunt Services applied for and received a Paycheck Protection Program ("PPP") Loan from the Small Business Administration in the amount of $892,690 (the "First Draw Loan").

74. Neither Hunt Services nor Mr. Hunt was aware of the Indictment or any related, pending law enforcement investigation when Hunt Services submitted its First Draw Loan Application.

75. Therefore, Hunt Services answered "no" in response to a question that inquired if its principal owner, Mr. Hunt, was the subject of an "indictment, criminal information, arraignment, or other means by which formal criminal charges are brought" on its application (SBA Form 2483, 04/20):

| | Question | Yes | No |
|---|---|---|---|
| 5. | Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole?<br>Initial here to confirm your response to question 5 → _____ | ☐ | ☐ |

76. Shortly after he was arrested, David Hunt transferred majority ownership of Hunt Services to his wife, Melissa Hunt.

77. In January 2021, Hunt Services submitted a Loan Forgiveness Application for the First Draw Loan in the amount of $892,690.

78. Hunt Services applied for a Second Draw PPP Loan on January 19, 2021, listing Melissa Hunt as the principal owner. That application was approved, and Hunt Services received a Second Draw loan in the amount of $1,239,557.16 on or about February 17, 2021.

79. On November 24, 2021, Hunt Services submitted a Loan Forgiveness Application for the Second Draw PPP loan in the amount of $1,239,557.16.

80. For each PPP loan, Hunt Services met all PPP employee retention criteria, and the PPP funds were used for eligible expenses.

81. But the SBA denied Hunt Services' applications for forgiveness of the First Draw Loan in the amount of $892,690.00 and the Second Draw Loan in the amount of $1,239,557.16, on the grounds that Mr. Hunt's sealed indictment rendered Hunt Services ineligible for PPP loans, even though Mr. Hunt and Hunt Services were legally prohibited from knowing about the Indictment when the application for the First Draw Loan was made. Hunt Services' purported ineligibility for the First Draw Loan also, according to the SBA, rendered Hunt Services ineligible for the Second Draw Loan and forgiveness of the same.

82. The SBA has demanded repayment in full of Hunt Services' PPP loans totaling $2,132,247.16.

## FIRST CAUSE OF ACTION
**Malicious Prosecution – FTCA 28 U.S.C. § 2671, *et seq*. (as to United States of America)**

83. Plaintiff incorporates the allegations of the preceding paragraphs of this Complaint by reference, as though fully set forth herein.

84. Mr. Hunt brings this malicious prosecution claim against the United States of America pursuant to the FTCA, 28 U.S.C. § 2671, *et. seq*.

85. Plaintiff David Hunt was indicted on February 25, 2020, and prosecuted for the offenses charged in Case No. 3:20-cr-37.

86. The criminal charges against Mr. Hunt were dismissed on July 26, 2022.

87. The United States of America, through its employees and agents (Cooperstein, Sutphin, Sanchez, Culpepper, and/or one or more unknown federal prosecutor(s) and federal agent(s)), instituted the criminal proceedings against Mr. Hunt with malice and without probable cause.

88. Significant irregularities existed in the grand jury proceedings as to Mr. Hunt. Upon information and belief, the United States of America's agents intentionally failed to present a full and complete statement of facts to the grand jury with respect to Mr. Hunt and his purported criminal intent and conduct, presented false and/or misleading information about Mr. Hunt, and purposefully withheld information from the grand jury which might have been exculpatory and/or dispositive as to Mr. Hunt's alleged criminal liability, affected the result, and/or engaged in other misconduct in presenting the case to the grand jury and seeking the Indictment of Mr. Hunt.

89. The charges against Mr. Hunt were maliciously and/or recklessly brought by the United States of America, and the charges were dismissed in full, on the government's motion, on July 26, 2022.

90. As a direct and proximate result of the unlawful conduct described herein, Mr. Hunt was wrongfully prosecuted, and suffered significant harm and damages, including emotional distress, mental anguish, reputational harm, and millions of dollars' worth of lost business

opportunities as a result, including but not limited to, contracts with the Cities of Jackson, Columbia, Clarksville in Tennessee; Rocky Mount, North Carolina; and Huntsville, Alabama.

**SECOND CAUSE OF ACTION:**
*Bivens* Claims for Constitutional Violations (as to Defendants Sutphin, Sanchez, Culpepper, John/Jane Doe Federal Agent(s), John/Jane Doe Assistant United States Attorneys) – the "Individual Defendants")

91. Plaintiff incorporates the allegations of the preceding paragraphs of this Complaint by reference as though fully set forth herein.

92. Mr. Hunt has a constitutionally protected right to be free from unreasonable and unlawful seizures of his person and property under the Fourth and Fourteenth Amendments of the United States Constitution.

93. The Individual Defendants violated that right, acting in their individual capacities and under color of federal authority, when they knowingly presented false, insufficient and/or irregular information to the grand jury that directly resulted in Mr. Hunt's wrongful prosecution and subsequent arrest, without probable cause, in violation of his constitutional rights.

94. There is no statutory or other cause of action that would provide meaningful relief to Mr. Hunt for the wrongful and unlawful actions of these Individual Defendants.

95. As a direct and proximate result of the Individual Defendants' unlawful conduct described herein, Mr. Hunt was deprived of his constitutional right to be secure in his person and property against unreasonable seizures of his person and property.

96. As a direct and proximate result of the Individual Defendants' unlawful conduct described herein, Mr. Hunt has suffered significant harm and damages, including emotional distress, mental anguish, reputational harm, and millions of dollars' worth of lost business

opportunities as a result, including but not limited to, contracts with the Cities of Jackson, Columbia, Clarksville in Tennessee; Rocky Mount, North Carolina; and Huntsville, Alabama.

### THIRD CAUSE OF ACTION:
*Bivens* Claim (as to the Individual Defendants) for Conspiracy to
Violate Mr. Hunt's Constitutional Rights

97. Plaintiff incorporates the allegations of the preceding paragraphs of this Complaint by reference as though fully set forth herein.

98. Mr. Hunt has a constitutionally protected right to be free from unreasonable and unlawful seizures of his person and property under the Fourth and Fourteenth Amendments to the United States Constitution.

99. The Individual Defendants, acting in their individual capacities, violated those rights when they jointly and severally combined, confederated, and conspired together to present irregular, materially false and/or misleading information to the grand jury about Mr. Hunt, to withhold exculpatory or other information tending to show Mr. Hunt's innocence and/or lack of criminal culpability, to intentionally deceive the grand jury, and to secure an indictment and arrest of Mr. Hunt without probable cause.

100. The Individual Defendants jointly and severally combined, confederated, and agreed to pursue an Indictment against Mr. Hunt without attempting to interview him or his business associates, or completing the other mandatory tasks required of FBI and other federal agents and prosecutors before presenting Mr. Hunt's case to a grand jury. The Individual Defendants, with malice, agreed to push the grand jury to indict Mr. Hunt and thereafter proximately caused his arrest pursuant to that indictment, knowing that they lacked probable cause to do so.

101. The Individual Defendants jointly and severally combined, confederated, and conspired together to maliciously prosecute Mr. Hunt and to effectuate his wrongful arrest. All charges against Mr. Hunt were eventually dismissed. *Neal*, Case No. 3:20-cr-00037, at ECF 111.

102. As a result of the Individual Defendants' unlawful conduct described herein, Mr. Hunt was deprived of his constitutional right to be secure in his person and property against unreasonable seizures of his person and property.

103. As a result of the Individual Defendants' unlawful conduct described herein, Mr. Hunt has suffered significant harm and damages, including emotional distress, mental anguish, reputational harm, and millions of dollars' worth of lost business opportunities as a result, including but not limited to, contracts with the Cities of Jackson, Columbia, Clarksville in Tennessee; Rocky Mount, North Carolina; and Huntsville, Alabama.

**FOURTH CAUSE OF ACTION:**
**FTCA 28 U.S.C. § 2671, *et seq*. (as to United States of America) for Conspiracy to Maliciously Prosecute and Falsely Arrest Mr. Hunt**

104. Plaintiff incorporates the allegations of the preceding paragraphs of this Complaint by reference as though fully set forth herein.

105. Mr. Hunt brings this conspiracy claim against the United States of America pursuant to the FTCA, 28 U.S.C. § 2671, *et. seq*.

106. On or about August 26, 2020, Mr. Hunt was detained by two FBI agents ("Agents") without his consent and without authority of law. Upon information and belief, the Agents were federal employees of the United States of America who were acting as investigative or law enforcement officers within the scope of their office or employment during the relevant time period.

107. The United States of America, through the actions of multiple employees (including the Individual Defendants) from the FBI, the United States Attorney's Office for the Southern

18

District of Mississippi, and/or the U.S. Department of Education, jointly and severally combined, confederated, and conspired to violate his constitutional rights and to institute criminal proceedings against Mr. Hunt with malice, when those employees agreed to present a false and misleading case against Mr. Hunt to a federal grand jury to secure an indictment and, following said indictment, agreed and proximately caused the Agents to effectuate Mr. Hunt's arrest, all without probable cause.

108. The individuals involved in this conspiracy were federal employees of the United States of America who were acting within the scope of their employment during the relevant period.

109. The Individual Defendants and Agents acted in concert and with malice in presenting the case against Mr. Hunt to the grand jury, in pursuing the Indictment, and in effectuating Mr. Hunt's arrest without probable cause.

110. As a result of the unlawful conduct described herein, Mr. Hunt has suffered significant harm and damages, including emotional distress, mental anguish, reputational harm, and millions of dollars' worth of lost business opportunities as a result, including but not limited to, contracts with the Cities of Jackson, Columbia, Clarksville in Tennessee; Rocky Mount, North Carolina; and Huntsville, Alabama.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff David Hunt demands that this case be tried by a jury and respectfully prays for relief that includes the following:

A) Compensatory damages including, but not limited to, reputational harm, mental anguish and distress, out-of-pocket losses, lost opportunity costs, interest, and any and all other compensatory damages under the law in an amount to be determined at trial;

B) Attorney's fees and other expenses as permitted by law;

C) Statutory and/or punitive damages as permitted by law;

D) Pre-judgment and post-judgment interest as well as all discretionary costs and other relief to which Plaintiff may be entitled;

E) Other relief, both special and general, to which Plaintiff may be entitled; and

F) A jury of twelve persons to try this case as permitted by law.

Dated: July 26, 2024

                Respectfully submitted,

                */s/ Kaytie M. Pickett*
                Kaytie M. Pickett, MSB #103202
                Jones Walker, LLP
                3100 North State Street, Ste. 300
                Jackson, MS 39216
                Telephone: 601-709-3344
                kpickett@joneswalker.com

                *Attorney for Plaintiff*