UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

DAVID HUNT                                                                                        PLAINTIFF

V.                                                          CIVIL ACTION NO. 3:24-CV-441-DPJ-LGI

UNITED STATES OF AMERICA et al.                                                  DEFENDANTS

ORDER

After being indicted and arrested on charges the government later dismissed, David Hunt sued the United States and various officers and employees. The government moves [19] to dismiss his Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Court dismisses his claims against individual Defendants but finds limited discovery appropriate on his claims against the United States.

I.    Background

As always, the Court takes Plaintiff's well-pleaded allegations as true under Rule 12(b)(6). Hunt is a Tennessee businessman. Am. Compl. [16] ¶ 19. In February 2020, a federal grand jury in the Southern District of Mississippi indicted him "on eight felony charges of conspiracy and wire fraud." *Id.* ¶ 1. The indictment "focused on contracts with the Mississippi Department of Education for the conversion of teacher personnel files from microfiche into digital format and related events[.]" *Id.* ¶ 40; *see* Indictment [19-1] ¶¶ 15–16.[1] The government officials investigating the case neither contacted Hunt nor notified him that he was a grand-jury

---

[1] Although Hunt doesn't attach the Indictment to his Amended Complaint, the Court may refer to it on two grounds: it's a public record, *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994), and it's mentioned in the Amended Complaint and closely tied to his claims, which include procurement of the Indictment by improper means, *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The same applies to Hunt's Form 95 [19-3] by which he properly exhausted his administrative remedies before filing his Federal Tort Claims Act (FTCA) claims.

target.  *Id.* ¶ 42.  Hunt believes this violated Department of Justice (DOJ) policy and procedures.  *Id*. ¶¶ 43–47.

Hunt also says the government "actively misled the grand jury" about his role in the alleged crimes and failed to tell the grand jury that the agents neither interviewed relevant witnesses nor obtained relevant documents.  *Id*. ¶¶ 49–50.  He claims this was part of a conspiracy to indict Hunt without probable cause.

About six months after the Indictment, in August 2020, the FBI arrested Hunt at his office parking lot.  *Id*. ¶¶ 30–32.  He claims that the officers twisted his arm and threw him against the side of his car.  *Id.* ¶ 32.  Once in jail, Hunt was strip searched and booked.  *Id.* ¶ 35.  FBI agents then gave Hunt a copy of the Indictment; he told them the charges did not make sense.  *Id.* ¶¶ 37–38.  An agent responded, "[W]e don't make mistakes."  *Id.* ¶ 39.

Two years after indictment, the Assistant United States Attorney (AUSA) and FBI case agent finally met with Hunt.  *Id.* ¶ 56.  The next month, the lead AUSA was sanctioned in another proceeding for lying to the district court on three occasions related to his COVID-19 vaccination status.  *Id*. ¶¶ 58–59.  Soon after, the government agreed to dismiss without prejudice all charges against Hunt.  *Id*. ¶ 60.

Despite the dismissals, the prosecution purportedly injured Hunt's reputation and his businesses.  *Id*. ¶¶ 71–73.  In fact, a press release announcing the indictment remained on the government's website through the filing of Hunt's Complaint; the site did not mention the dismissals.  *Id*. ¶ 70.

Feeling aggrieved, Hunt sued.  He asserted four claims:  (1) malicious prosecution (against the United States), (2) a *Bivens* claim of unconstitutional seizures (against the individual

Defendants),² (3) another *Bivens* claim alleging conspiracy to maliciously prosecute and falsely arrest him (against same), and (4) a tort claim for malicious prosecution and false arrest (against the United States). The government now moves to dismiss [19]. Defendants are the United States, three named special agents, "John/Jane Doe AUSA(s)," and "John/Jane Doe Federal Agent(s)."³ *Id.* ¶¶ 11–17.

II.     Standards

A motion to dismiss under Rule 12(b)(1) challenges the court's subject-matter jurisdiction. "A case is properly dismissed for lack of subject[-]matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Loc. 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). Hunt bears the burden of proving that the Court has subject-matter jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

When deciding a Rule 12(b)(6) motion to dismiss, the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)). But the Court will not "accept as true

---

² *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics*, 403 U.S. 388 (1971).

³ It is unclear whether AUSA Theodore Cooperstein was an intended party. He is not named in the caption of the Amended Complaint, he is not named in the causes of action that identify other individual defendants, and no summons has been issued for him. On the other hand, Hunt included Cooperstein in the section of his Amended Complaint identifying the "parties." *See* Am. Compl. [16] ¶ 12. The Court finds he is not a Defendant. Even so, there can be no FTCA claim against him, and the *Bivens* claim lacks merit.

3

conclusory allegations, unwarranted factual inferences, or legal conclusions." *Watkins v. Allstate Prop. & Cas. Ins. Co.*, 90 F.4th 814, 817 (5th Cir. 2024) (quoting *King v. Baylor Univ.*, 46 F.4th 344, 356 (5th Cir. 2022)). "Conclusory" means "[e]xpressing a factual inference without stating the underlying facts on which the inference is based." *Black's Law Dict.* (11th ed. 2019), *quoted in Favela v. Collier*, 91 F.4th 1210, 1213 (5th Cir. 2024).

To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

III.   Discussion

Defendants make six arguments. They say Hunt fails to state any *Bivens* claims, which would also be barred by qualified immunity. Defs.' Mem. [20] at 3–9. They say the FTCA bars his claims for false arrest and malicious prosecution, either based on the statute of limitations (false arrest) or the discretionary-function exception (malicious prosecution). *Id.* at 9–11. And they argue Hunt fails to plead with the particularity required under Rule 9(b). *Id.* at 12–13. Finally, in a supplemental memorandum [21] filed three days after their motion, they also argue that the *Bivens* claims are barred by the statute of limitations.

4

A.     *Bivens* Claims

Counts Two and Three assert *Bivens* claims against the individual Defendants.  Am. Compl. [16] at 15–16.  "In *Bivens*, the Supreme Court recognized an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Byrd v. Lamb*, 990 F.3d 879, 881 (5th Cir. 2021).

The Supreme Court then applied *Bivens* in two additional cases, *Carlson v. Green*, 446 U.S. 14 (1980), and *Davis v. Passman*, 442 U.S. 228 (1979).  As such, the Supreme Court has recognized constitutional claims in just three contexts:

> (1) manacling the plaintiff in front of his family in his home and strip-searching him in violation of the Fourth Amendment; (2) discrimination on the basis of sex by a congressman against a staff person in violation of the Fifth Amendment; and (3) failure to provide medical attention to an asthmatic prisoner in federal custody in violation of the Eighth Amendment[.]

*Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020) (citing *Bivens*, 403 U.S. at 389–90; *Davis*, 442 U.S. 228; *Carlson*, 446 U.S. 14) (internal citations omitted).

"In the more than four decades since" these rulings, "the [Supreme] Court has 'consistently rebuffed' every request . . . to find implied causes of action against federal officials for money damages under the Constitution." *Mays v. Smith*, 70 F.4th 198, 202 (4th Cir. 2023) (quoting *Tate v. Harmon*, 54 F.4th 839, 843 (4th Cir. 2022)).  The Court has instead "cautioned against extending *Bivens* to new contexts, noting that it is a 'disfavored judicial activity.'" *Evans v. United States*, No. 24-40300, 2025 WL 655799, at *3 (5th Cir. Feb. 28, 2025) (quoting *Egbert v. Boule*, 596 U.S. 482, 491 (2022)).

A two-part test applies.  First, the Court must determine whether the claim presents a new *Bivens* context.  *Ziglar v. Abbasi*, 582 U.S. 120, 139 (2017).  "If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." *Id.*

5

While the Supreme Court has not offered an "exhaustive list of differences that are meaningful enough to make a given context a new one," it has offered examples that demonstrate a difficult burden. *Id.* Those include

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 140 (quoted in *Hernandez v. Causey*, 124 F.4th 325, 332 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 1930, 221 L. Ed. 2d 667 (2025)).

If the context is new, the second step asks whether *Bivens* should be extended. "[A] *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 492 (quoting *Ziglar*, 582 U.S. at 136). "*Egbert* makes clear that a *Bivens* action should not proceed where 'there is any rational reason (even one) to think that Congress is better suited' to make that determination." *Hernandez*, 124 F.4th at 333 (quoting *Egbert*, 596 U.S. at 496).

Hunt claims his parking-lot arrest in front of his employees and strip search at the courthouse fall within the original *Bivens* context. Pl.'s Mem. [25] at 11–12. While there are some similarities, the context is new for a reason Hunt acknowledges: "Mr. Bivens was arrested without a warrant, and Mr. Hunt's arrest was the result of a tainted grand[-]jury proceeding and indictment that lacked probable cause." Pl.'s Mem. [25] at 12. Another distinguishing fact is that Bivens was arrested in his home. *Bivens*, 403 U.S. at 389. Unlawful "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445 U.S. 573, 585–86 (1980) (quoting *United States v. U.S. Dist. Ct.*, 407 U.S. 297,

6

313 (1972)). Arrest in a parking lot and search in a courthouse's detention facility, however egregious they may have felt to Hunt, are materially different—especially since Hunt had been indicted. See *Byrd*, 990 F.3d at 882 (distinguishing parking-lot detention from home search).

Because Hunt pleads a new context for a *Bivens* claim, the Court considers whether the relevant factors weigh against extending *Bivens*. A key factor is the availability of an "alternative remedial structure," which "alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Oliva*, 973 F.3d at 443 (quoting *Ziglar*, 582 U.S. at 137).

An alternative remedy existed in *Oliva*: money damages under the FTCA. *Id*. at 444. Hunt has sued for exactly that relief. He says the improper grand-jury proceedings led to Fourth Amendment violations under *Bivens*, Am. Compl. [16] ¶¶ 82–94, but those proceedings are also the basis of his FTCA claims, *id*. ¶¶ 75–81, 96–101.

To the extent that his *Bivens* and FTCA claims may not perfectly line up with one another, that is no reason to enlarge the scope of *Bivens* because "the alternative relief necessary to limit *Bivens* need not provide the exact same kind of relief *Bivens* would." *Oliva*, 973 F.3d at 444 (citing *Minneci v. Pollard*, 565 U.S. 118, 129 (2012) (holding state-law remedies "need not be perfectly congruent" with possible *Bivens* remedy)). This alone justifies declining to extend *Bivens*. "[W]hen alternative means of relief are available, a *Bivens* remedy usually is not." *Ziglar*, 852 U.S. at 145. And in any event, "Congress is better suited" to decide whether to create a new cause of action against federal officers. *Egbert*, 596 U.S. at 496.

Therefore, Hunt fails to state a *Bivens* claim, making it unnecessary for the Court to address Defendants' qualified-immunity and statute-of-limitations arguments. *Byrd*, 990 F.3d at 882. Counts Two and Three are dismissed with prejudice because leave to amend would be futile. The individual Defendants are dismissed.

B. FTCA Claims

The FTCA waives the sovereign immunity of the United States, subject to certain limits and exceptions. 28 U.S.C. §§ 2679(a)-(b)(1); *see In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 252 (5th Cir. 2006). Thus a plaintiff may seek to "hold[] the government liable as if it were a defendant in state court." *Id*.

In his FTCA Form 95 administrative complaint [19-3], Hunt alleged malicious prosecution, false arrest, and emotional distress. Now in court, Hunt has dropped the emotional distress claim, and he makes no stand-alone claim for false arrest. He instead asserts malicious prosecution (Count One) and "conspiracy to maliciously prosecute and falsely arrest" (Count Four). Am. Compl. [16] at 14, 17. Hunt correctly limits both FTCA claims to the United States. *See Atorie Air, Inc. v. Fed. Aviation Admin.*, 942 F.2d 954, 957 (5th Cir. 1991) (noting that FTCA does not extend to federal agencies or agents).

The government argues that the false-arrest claims are time-barred and that all FTCA claims are precluded by sovereign immunity. Defs.' Mem. [20] at 9-12. It alternatively says Hunt failed to state a claim. *Id.* at 12-13.

  1. Statute of Limitations—False Arrest

Plaintiffs asserting claims under the FTCA must do so no later than two years after the claims accrue. 28 U.S.C. § 2401(b). Here, the government does "not challenge the timeliness of the malicious prosecution-related claims," but it does challenge the timeliness of "the separate claim of false arrest and conspiracy to commit false arrest claims." Defs.' Reply [26] at 6, n.5.

To the extent that a "separate claim of false arrest" could be inferred from the Amended Complaint, the government is correct—the limitations period has expired. *Id.* But Hunt did not plead a separate false-arrest claim. Count One—the only FTCA count that does not include

8

conspiracy—alleges "malicious prosecution." Am. Compl. [16] at 14. The timeliness of Count One is not, therefore, challenged. Defs.' Reply [26] at 6, n.5.

As for conspiracy to commit false arrest, the government says Hunt was arrested on August 26, 2020, so he missed the two-year statute of limitations when he presented his FTCA claim in January 2024. Defs.' Mem. [20] at 10; *see* Am. Compl. [16] ¶ 25; *see also* Form 95 [19-3] at 1. To begin, whether there is a conspiracy-to-commit-false-arrest claim is unclear. As noted, Count Four alleges "conspiracy to maliciously prosecute and falsely arrest Mr. Hunt." Am. Compl. [16] at 17. The malicious-prosecution part of that count is not disputed and moves forward. As for false arrest, Hunt explains that Defendants and others

> conspired to violate his constitutional rights and to institute criminal proceedings against Mr. Hunt with malice, when those employees agreed to present a false and misleading case against Mr. Hunt to a federal grand jury to secure an indictment and, following said indictment, agreed and proximately caused the Agents to effectuate Mr. Hunt's arrest, all without probable cause.

*Id.* ¶ 98. Thus, "[t]he Individual Defendants and Agents acted in concert and with malice in presenting the case against Mr. Hunt to the grand jury, in pursuing the Indictment, and in effectuating Mr. Hunt's arrest without probable cause." *Id.* ¶ 100.

Hunt says that because the false arrest flows from the malicious prosecution, the claim accrued when the charges were dropped. Pl.'s Mem. [25] at 14. He relies on *Winfrey v. Rogers*, 901 F.3d 483, 493 (5th Cir. 2018). There, the plaintiff was arrested on a bogus warrant and held for nearly two years before being acquitted at trial. *Id.* at 488–89. The defendant argued on appeal that the false arrest accrued when Winfrey was arrested. *Id.* at 492. But the Fifth Circuit held that "[t]he accrual date depends on whether [the plaintiff's] claim more closely resembles one for false imprisonment or one for malicious prosecution." *Id.* The court first noted that "[a] malicious-prosecution claim is based upon 'detention accompanied . . . by *wrongful institution* of

9

legal process." *Id.* (emphasis and omission in *Winfrey*) (quoting *Wallace v. Kato*, 549 U.S. 384, 390 (2007)). It then concluded that the plaintiff's "claim is more like the tort of malicious prosecution, because [the plaintiff] was arrested through the wrongful institution of legal process[.]" *Id.* at 493. The government never addresses *Winfrey* in its reply. And absent a contrary argument, the Court concludes that Count Four should not be dismissed based on the statute of limitations.[4]

### 2.    Malicious-Prosecution Claims

The government argues that Hunt's malicious-prosecution claims should be dismissed under the FTCA's discretionary-function exception and alternatively because he fails to state a claim. Defs.' Mem. [20] at 10-13.

#### a.    Discretionary-Function Exception

The FTCA waives sovereign immunity, but it provides exceptions, including the discretionary-function exception. That exception is codified at 28 U.S.C. § 2680(a) and retains sovereign immunity for

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

If the exception applies, then the Court lacks subject-matter jurisdiction due to sovereign immunity. *Joiner v. United States*, 955 F.3d 399, 404 (5th Cir. 2020) (noting plaintiff "carries the burden of establishing that the discretionary[-]function exception does not apply"); *Campos v. United States*, 888 F.3d 724, 731 (5th Cir. 2018).

---

[4] This holding is without prejudice to the government re-urging the matter under Rule 56.

But § 2680 includes another provision that muddies the water—the law-enforcement proviso.  Under § 2680(h), the United States waives sovereign immunity for certain intentional torts—including "malicious prosecution"—based on "acts or omissions of investigative or law enforcement officers of the United States Government."  "[I]nvestigative or law enforcement officer' means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law."  28 U.S.C. § 2680(h); *see also Millbrook v. United States*, 569 U.S. 50, 57 (2013) (explaining proviso's scope).

***Harmonizing the competing sections:***   Courts have recognized the "tension" between these provisions and have struggled to reconcile them.  *Nguyen v. United States*, 65 F. App'x 509, 2023 WL 1922969, at *1 (5th Cir. 2003).  On the one hand, § 2680(h) seems to expressly allow malicious-prosecution claims, but § 2680(a) forecloses claims based on acts of government officials "exercising due care" when performing "discretionary function[s]," which the government says includes prosecutorial decisions like those Hunt challenges.  Defs.' Mem. [20] at 11.

The Fifth Circuit addressed this problem in *Sutton v. United States*, 819 F.2d 1289 (5th Cir. 1987).  There, the plaintiff claimed that a postal investigator lobbied state and federal prosecutors to prosecute the plaintiff for fraud.  *Id.* at 1291.  The plaintiff believed the investigator did so by suppressing and manipulating evidence.  *Id.*  Although indictments were obtained, they were later dismissed, and the plaintiff sued the United States for malicious prosecution.  *Id.*  The government asserted sovereign immunity based on the discretionary-function exception, and the plaintiff countered with the law-enforcement proviso's sovereign-immunity waiver.  The district court agreed with the government and dismissed the case for lack of subject-matter jurisdiction.  *Id.*  The Fifth Circuit reversed.

11

The Fifth Circuit first concluded that "[n]either § 2680(a) or § 2680(h) exist independently of the other nor does one predominate over the other." *Id.* at 1295. Thus, the law-enforcement proviso does not trump the discretionary-function exception. *Id.* By the same token, "if the law[-]enforcement proviso is to be more than an illusory—now you see it, now you don't—remedy, the discretionary[-]function exception cannot be an absolute bar which one must clear to proceed under § 2680(h)." *Id.* at 1297. "In other words, one does not moot the other when both cover a fact pattern." *Campos*, 888 F.3d at 737 (citing *Sutton*, 819 F.2d at 1297).

The United States Supreme Court recently endorsed that position in *Martin v. United States*, holding that the proviso does not negate the discretionary-function exception. 145 S. Ct. 1689, 1699 (2025). It then remanded the case for the lower court to determine "whether subsection (a)'s discretionary-function exception bars either the plaintiffs' negligent- or intentional-tort claims" despite the proviso. *Id.* at 1703. Thus, some—but not all—cases under the law-enforcement proviso may fail under the discretionary-function exception. *Sutton*, 819 F.2d at 1294–95.[5]

***When the discretionary-function exception applies:*** The obvious next question is when will an intentional tort listed in § 2680(h) fail the discretionary-function exception. The exception follows a two-part test. Courts first ask whether the complained-of conduct is "discretionary in nature," involving "an element of judgment or choice." *Cantu Silva v. United States*, 110 F.4th 782, 787 (5th Cir. 2024) (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)). If the first element is met, then the second question is whether that judgment or choice

---

[5] The government moved [27] for leave to brief *Martin* in a supplemental memorandum. The parties then briefed the motion for leave, taking the opportunity to analyze *Martin* in the process. Based on those arguments and the Court's own reading of *Martin*, additional briefing is unnecessary. The Court therefore denies the motion [27].

is "of the kind that the discretionary function exception was designed to shield," meaning conduct resting on public-policy considerations.  *Id*. (quoting *Gaubert*, 499 U.S. at 322–23). That asks whether the officer's acts were "susceptible to policy analysis," not whether the officer considered such concerns.  499 U.S. at 325.

While the two-part test is firmly established, it has caused confusion—especially when the specific claim is listed in the law-enforcement proviso.  The *Martin* majority "readily acknowledge[d]" this confusion, noting "that different lower courts have taken different views of the discretionary-function exception."  145 S. Ct. at 1703.  But it declined to say how the exception should be construed when applied to a claim listed in the proviso because that issue exceeded those for which it granted certiorari.  *Id*.[6]

Because *Martin* tabled the issue, Fifth Circuit law remains intact.  Starting with a little dicta, the *Sutton* court said, "One may hypothesize, the classic *Bivens*-style tort, in which a federal law[-]enforcement officer uses excessive force, contrary to the Constitution or agency guidelines, which simply does not involve the exercise of discretion as that term has been applied under § 2680(a)."  819 F.2d at 1293.  But the court ultimately remanded Sutton's case because it lacked "analysis of the detailed regulations reflecting the scope of authority governing [the postal investigator's] official behavior."  *Id.* at 1298.

---

[6] In a concurrence, Justice Sotomayor demonstrated just how messy that landscape has become. *See id.* at 1705 (Sotomayor, J., concurring).  And while she agreed with the majority holding that the "proviso does not altogether trump the discretionary-function exception," she contended that "[w]hatever else is true of [the discretionary-function] exception, any interpretation should allow for liability in the very cases Congress amended the FTCA to remedy."  *Id.*

13

Subsequent Fifth Circuit opinions have offered similar guidance. In *Campos*, the court again rejected—as did *Martin*—the argument that the proviso always trumps the discretionary-function exception. 888 F.3d at 731. The court then addressed when discretion exists:

> Government officials do not have relevant discretion when "a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" *United States v. Gaubert*, 499 U.S. 315, 322, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991) (quoting *Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531, 536, 108 S. Ct. 1954, 100 L. Ed. 2d 531 (1988)). "In other words, the discretionary[-]function exception does not apply if the challenged actions in fact violated a federal statute, regulation, or policy." *Spotts* [*v. United States*, 613 F.3d 559, 567 (5th Cir. 2010)].

*Id.*

*Campos* also notes that the Fifth Circuit has not yet determined—as other circuits have—whether acting contrary to the Constitution exceeds discretionary function. *Id.* at 735. While the *Campos* court had no need to reach that issue, it did note that whether the conduct alleged "would not be shielded from liability is defined by the *Sutton* court's focus on *Collinsville* and *Bivens* situations," both involving constitutional violations. *Id.* at 737. *Sutton* at least suggests that constitutional violations exceed discretion. 819 F.2d at 1293 ("[W]e have not hesitated to conclude that such action does not fall within the discretionary function of § 2680(a) when governmental agents exceed the scope of their authority as designated by statute or the Constitution."); *see also Nguyen*, 2023 WL 1922969, at *2 (holding that discretionary-function exception applied because officers "did not commit a constitutional violation nor did they engage in any conduct that could be described as in bad faith"). In short, there are malicious-prosecution cases that survive the discretionary-function exception to the FTCA's sovereign-immunity waiver.

*As applied:* Courts attempting to harmonize these provisions should first "determine if the law[-]enforcement proviso applies." *Campos*, 888 F.3d at 737. That issue is not disputed, so the Court turns to the discretionary-function issue.

The government argues that prosecutorial decisions are inherently discretionary. Defs.' Mem. [20] at 11 (citing *Loumiet v. United States*, 828 F.3d 935, 942 (D.C. Cir. 2016)). But, as noted, that's not always true. *See Sutton*, 819 F.2d at 1293. Were it so, then the law-enforcement proviso would be "illusory." *Id.* at 1297. In addition, Hunt says he is not challenging the decision to prosecute or investigate: "[O]nce the discretionary choice to move forward with the grand[-]jury presentment was made, the prosector and case agents unlawfully and intentionally withheld information or misled the grand jury." Pl.'s Mem. [25] at 6.

So what are the facts? Because neither party submits record evidence that impacts this decision, the Court looks to "the complaint alone." *Campos*, 888 F.3d at 729 (noting scope of review under Rule 12(b)(1) (citation omitted)). In that pleading, Hunt alleges that federal agents "deliberately ignored the lack of" evidence showing his guilt "and/or blatantly refused to gather" evidence that would have exonerated him. Am. Compl. [16] ¶ 50. That includes failing to interview Hunt or other key witnesses before seeking an indictment. *Id.* ¶ 42. He also alleges that "Defendants then withheld this glaring evidentiary gap from, and actively misled, the grand jury with respect to Mr. Hunt's role in the charged conduct." *Id.* ¶ 50.

According to Hunt, failing to interview him violated "mandatory" DOJ policy because the crime was nonviolent and he had no prior criminal history. *Id.* ¶ 45; *see also id.* ¶¶ 43–45. He also asserts, "[u]pon information and belief, no other individual has been indicted in the Southern District of Mississippi for a non-violent fraud or public corruption charge, without being first contacted and/or interviewed by either the United States Attorney's Office or the lead

15

federal investigating agent." *Id.* ¶ 46.  He then says Defendants' decision to intentionally withhold exculpatory information from the grand jury resulted in an indictment "without probable cause." *Id.* ¶ 51.  After Hunt met with the government to explain his circumstances, the charges were dismissed.  *Id.* ¶ 58.

Some of those allegations are conclusory.  *See Sutton*, 819 F.2d at 1299 (noting that plaintiff must plead "a specific detailed factual statement overcoming the possibility of governmental immunity") (quoting *Elliott v. Perez*, 751 F.2d 1472, 1476 (5th Cir. 1985)).  But there are facts to consider, including the failure to conduct any pre-indictment interviews, the DOJ practices as applied within the Southern District, and the dismissals shortly after the government interviewed Hunt.

Other facts that may speak to whether jurisdiction exists are impossible to know.  For example, grand-jury proceedings are secretive, so there is no way for Hunt to plead facts about what was allegedly excluded and whether that exclusion violated regulations, policies, or even the Constitution.  *See Campos*, 888 F.3d at 731.  That information is crucial to the analysis.  Nor could Hunt know exactly what the agents did or did not do during the investigation and how that relates to what they may have intentionally withheld from the grand jury, if anything.

"At the pleading stage, [the] plaintiff must invoke the court's jurisdiction by alleging a claim that is facially outside of the discretionary[-]function exception." *Dickson v. United States*, 11 F.4th 308, 312 (5th Cir. 2021) (citing *St. Tammany Parish ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 n.3 (5th Cir. 2009)).  But

> the threshold question of governmental immunity is not always answerable on general pleadings under [Rule] 8.  Trial courts ought not try to deal with this on motions under [Rule] 12(b), when the proper disposition of the case requires some factual development by the parties.  Instead, the court should use its pretrial powers to compel the parties to submit the problem by summary judgment. The summary[-]judgment process, in which affidavits and depositions, both pro and

16

> con, are submitted will reveal exactly what facts exist, not just what the parties generally claim to exist. This is so even though the summary[-]judgment process might make summary judgment unavailable by demonstrating a genuine issue of material fact exists. At the same time the court must be mindful of the serious policy concerns expressed by this court and others in protecting the government against unnecessary discovery whenever possible. Permitting limited discovery for the purpose of providing the court with sufficient information to answer the threshold question of governmental immunity is consistent with both the spirit and holding of *Harlow* [*v. Fitzgerald*, 457 U.S. 800, 818 (1982) (holding that officers entitled to absolute or qualified immunity should be protected when possible from burdens of discovery)].

*Sutton*, 819 F.2d at 1299.

Limited discovery on jurisdictional questions is not always proper, like when the relevant facts are public record. *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 1999) (affirming denial of discovery on possible limits to discretionary-function immunity). But here, Hunt's claims involve the government's investigations and its proceedings before a grand jury, hardly matters of public record.

On these facts, limited discovery is warranted for "some factual development by the parties." *Sutton*, 819 F.2d at 1299. This portion of the motion to dismiss is therefore denied, and the parties are directed to contact the chambers of United States Magistrate Judge Lakeysha Greer Isaac to set the scope of and a schedule for jurisdictional discovery.

**Failure to state a claim:** Based on the last holding, the Court will not dwell on the government's Rule 12(b)(6) argument that Hunt failed to plead a plausible malicious-prosecution claim.

The standard under Rule 8(a)(2) "'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d at 587 (quoting *Twombly*, 550 U.S. at 556).

17

The elements of malicious prosecution under the FTCA are those of the state-law tort. 28 U.S.C. § 1346(b)(1). There are six:

(1) the institution or continuation of original judicial proceedings, either criminal or civil;
(2) by, or at the insistence of the defendants;
(3) the termination of such proceeding in plaintiff's favor;
(4) malice in instituting the proceedings;
(5) want of probable cause for the proceedings; and
(6) the suffering of damages as a result of the action or prosecution complained of.

*Bearden v. BellSouth Telecommunic'ns, Inc.*, 29 So. 3d 761, 764 (Miss. 2010) (quoting *Van v. Grand Casinos of Miss., Inc.*, 724 So. 2d 889, 891 (Miss. 1998)).

"Prosecution" in this sense is not confined to its narrow sense of a prosecuting attorney's actions. *See, e.g.*, *Health Mgmt. Assocs., Inc. v. Weiner*, 264 So. 3d 747, 748 (Miss. 2019) (addressing malicious-prosecution claim against hospital and its management). Though close, Hunt's non-conclusory allegations addressed in the previous section state a plausible claim. If appropriate, he may seek leave to amend after the limited discovery discloses more precisely whether probable cause existed.

V.   Conclusion

The Court has considered all arguments presented. Any arguments not specifically addressed here would not alter the outcome. The motion to dismiss [19] is granted in part and denied in part. Counts Two and Three are dismissed with prejudice, as are all individual Defendants, including John/Jane Doe parties. The motion is denied as to Counts One and Four. At the close of the limited discovery, the government may seek partial summary judgment based on the discretionary-function exception if the evidence supports it.

**SO ORDERED AND ADJUDGED** this the 8th day of September, 2025.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE